Mary **BOURQUE** on her own behalf and as next friend of Theresa Bourque, Susan Cripe, Raymond Cripe, Carol Cripe, Rayanne Keefe, on behalf of themselves and all others similarly situated

v.

Bernard **SHAPIRO**, Commissioner of Welfare of the State of Connecticut.

Civ. No. 13522.

United States District Court, D. Connecticut.

Jan. 28, 1970.

Bruce N. Berwald, Tolland-Windham Legal Assistance Program, Inc., Willimantic, Conn., for plaintiff.

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn., for defendant.

RULING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS

BLUMENFELD, District Judge.

This suit challenges the failure of the defendant Commissioner of Welfare to apply one of the Connecticut State Welfare Department's regulations [1] relating to support from legally liable relatives, on the ground that failure to do so in this case deprived the plaintiffs of "rights guaranteed by the United States Constitution and secured by the Social Security Act."

The basis for this suit has its inception in plaintiff Mary Bourque's recent divorce from her husband, Leo. In granting the divorce, the court ordered him to contribute $25 per week (or $108.33 per month) for the support of his 8 year old daughter, Theresa, the only issue of that marriage. In addition to plaintiff Theresa, Mrs. Bourque has four other minor children, also plaintiffs here, all of whom are recipients of public assistance under Connecticut's AFDC Program. *See* Conn.Gen.Stats. Title 17, Ch. 302, Part II. Under this program, the family receives a total monthly budgetary allotment of $418.30. Included in this amount is $75.94 for the needs of the plaintiff mother as supervising relative and $63.94 for Theresa's needs. Since July 11, 1969, when the court-ordered payments for Theresa's support became effective, the state has retained those payments without making any revision in the total budget of the Bourque family.[2]

The specific shape of the relief sought by the plaintiffs' prayer for an "injunction enjoining the Defendant from withholding and/or reducing public assistance to the Plaintiffs" was revealed more clearly during the hearing on the administrative appeal from the departmental action. At that time, Mrs. Bourque requested that Theresa be removed from the welfare rolls as a dependent child in her family.[3] Brought into sharper focus from this aspect, the specific claim is that $44.39 per month —the difference between the support payments of $108.33 per month from Leo Bourque and $63.94, the amount paid for Theresa by the defendant pursuant to the budget—is being wrongfully withheld by the Commissioner.

The defendant has moved to dismiss, and the plaintiffs have moved for summary judgment.

### Jurisdiction

Assuming that the plaintiffs' claim as stated [4] falls within the locutions of the Civil Rights Act, 42 U.S.C. § 1983,[5] it

---

1. Conn. State Welfare Manual § 344.

2. The payments are made into the Domestic Relations Division of the Superior Court, and thence remitted to the commissioner of finance and control. *See* Conn.Gen. Stats. § 17–323a, as amended, (1967).

3. "It was explained to the appellant that her family is considered as a unit for Aid to Families with Dependent Children and all technically eligible members were considered as eligible members for AFDC with their income deducted from the family's total needs. It was further explained that if this child was not an eligible member she would need to meet her prorated share of household replacements, etc." Memorandum of Decision, Fair Hearing, October 10, 1969, p. 2, Exhibit B to Complaint.

4. Anticipating the defendant's justification for his conduct on the ground that Conn.

Gen.Stats. § 17–320, entitled "Relatives Obligated to Furnish Support" imposes an obligation on a minor child to support her parent, the plaintiffs, in their brief, at 4, "expressly do not contend that C.G.S. § 17–320 is unconstitutional. Plaintiffs do contend however that if defendant's actions are based on this statute, he has illegally and improperly applied it in the case at bar. By so doing defendant has deprived plaintiffs of rights guaranteed by the United States Constitution and secured by the Social Security Act." Instead of an injunction against enforcement of the statute, the plaintiffs, adhering to their theory, seek one restraining the defendant and his successors from the enforcement of "certain policies, practices, customs and usages."

5. 42 U.S.C. § 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom,

does not follow automatically that a cause of action is stated or that jurisdiction can be rested on 28 U.S.C. § 1343 (3).[6] In both McCall v. Shapiro, 416 F. 2d 246 (2d Cir. 1969), and Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), two separate panels of the Court of Appeals for the Second Circuit held that the scope of § 1983 and the coverage of § 1343(3) were limited by the formulation of Mr. Justice Stone in Hague v. CIO, 307 U.S. 496, 518, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939), to cases concerning deprivations of rights only "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." *See also*, Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970) (dissent); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968).

■ Thus, where relief is sought under 42 U.S.C. § 1983 in a suit "involving solely money claims not related to violation of civil rights," *see McCall, supra*, 416 F.2d at 250, jurisdiction over such claims cannot be predicated on 28 U.S.C. § 1343(3). *Eisen, supra*, 421 F.2d at 566. For the plaintiffs to say that they assert not a deprivation of a property right, but a denial of equal protection is an elusive side-step. The nature of the right infringed by the denial of equal

protection is what must be taken into account. Of course, it is easy enough to identify the allegedly infringed right at stake here as a property right because it has already been reduced to a value in dollars and cents. *Cf.* Hague v. CIO, *supra*, 307 U.S. at 503, 59 S.Ct. 954, 83 L. Ed. 1423; Bradford Audio Corp. v. Pious, *supra*, 392 F.2d at 72. But the difficulties may not always end here, for as Judge Friendly observed of King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), conceptually the economic loss to Mrs. Smith's children might have been regarded also as an infringement of "their 'liberty' to grow up with financial aid for their subsistence * * *."[7] *Eisen, supra*, 421 F.2d at 564. *Cf.* Gold v. Lomenzo, *supra*.

■ Even this concept would hardly be applicable here, where the plaintiffs themselves, to press the claim, propose to strip Theresa of the only vestige of her right to welfare aid for subsistence by removing her from the welfare rolls. *See* note 3, p. 2. But whether Theresa is removed from the welfare rolls or not, the ruling of the Commissioner has not diminished or terminated any welfare benefits designed by its statutes to satisfy her basic subsistence needs.[8] The claim for the extra $44 per month now being paid by Theresa's father remains

or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6. 28 U.S.C. § 1343(3) provides:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person.
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress

providing for equal rights of citizens or of all persons within the jurisdiction of the United States * * *."

7. *See also, McCall, supra*, 416 F.2d at 248, n. 1: "We have no occasion * * * to consider whether the due process claim may not be substantial where termination of relief without prior hearing effectively cuts off family support. *Cf.* Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y. 1968)."

8. Section 19 of P.A. 730 (1969) provides in part:
"The commissioner shall grant aid * * in such amount, determined in accordance with standards established by the commissioner, as is needed in order to * * * support * * * dependent * * * children * * * in health and decency * * *."

merely a dispute over property rights. It follows that the court does not have jurisdiction of the plaintiffs' claim under 28 U.S.C. § 1343(3), and since no "Act of Congress providing for the protection of civil rights * * *" is involved, jurisdiction cannot be grounded on § 1343(4).[9] *See, McCall, supra,* 416 F.2d at 249.

The particular right of the plaintiffs which is allegedly infringed by a denial of equal protection, not being "one of personal liberty," is insufficient to support a cause of action under § 1983 or jurisdiction under § 1343(3) or (4), and does not qualify monetarily under 28 U.S.C. § 1331. Since no federal claim of sufficient substantiality to support jurisdiction has been raised in the complaint, the case must be dismissed for lack of jurisdiction. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); McCall v. Shapiro, 292 F.Supp. 268 (D. Conn.1968), aff'd, 416 F.2d 246 (2d Cir. 1969).

The plaintiffs' motion seeking summary judgment is denied. The defendant's motion seeking only dismissal of this action is granted.

The case is dismissed for lack of jurisdiction. Whether plaintiffs may still have a remedy in the state courts is for Connecticut's courts to determine. They are obligated to enforce federal rights, *see* Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), and they are not foreclosed by this dismissal for lack of jurisdiction on the grounds indicated. *Cf.* Railroad Comm. of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 580, 60 S.Ct. 1021, 84 L.Ed. 1368, *as amended,* 311 U.S. 614, 615, 61 S.Ct. 66, 85 L.Ed. 390 (1940).

It is so ordered.

9. 28 U.S.C. § 1343(4) provides original jurisdiction in the district courts of any civil action:

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, * * *"