**CITY OF GAINESVILLE, GEORGIA**

v.

**SOUTHERN RAILWAY COMPANY.**

**Civ. A. No. 1252.**

United States District Court
N. D. Georgia,
Gainesville Division.

March 3, 1969.

Charles J. Bloch, Macon, Ga., Emory F. Robinson, Gainesville, Ga., for plaintiff.

Kenyon, Gunter, Hulsey & Sims, Gainesville, Ga., for defendant.

JOHN R. BROWN, Chief Judge:

As a member of a Standing Screening Panel of the Fifth Circuit,[1] my attention in my role of Chief Judge was called to the fact that in this case[2] the Railroad by cross claim sought an injunction against enforcement of the Georgia statute in-

**1.** See Groendyke Transport, Inc. v. Davis, 5 Cir., 1969, 406 F.2d 1158 [Jan. 2, 1969]; Floyd v. Resor, 5 Cir., 1969, 409 F.2d 714, n. 2 [Feb. 24, 1969]; Fifth Circuit Rules 17–20.

**2.** It is before the Fifth Circuit as No. 27335, appeal by the Railroad, seeking to reverse the mandatory injunction requiring the Railroad to install grade crossing safety devices. The panel was asked to stay the Trial Court's decree pending determination of the appeal.

volved[3] on the ground that it was unconstitutional.

The moving papers also reflected that the Railroad formally requested the District Judge to certify the case to the Chief Judge for convening a 3-Judge Court, 28 U.S.C.A. §§ 2281–2284, which the District Court declined to do. Apparently this was on the ground, not that the constitutional attack was so unsubstantial[4] as not to require a 3-Judge Court, but rather, because the final decree[5] granted relief to the City but denied injunctive relief to the Railroad.

 Although it is not for me to determine finally whether a 3-Judge Court is required, it is plain that the reason given by the District Judge is not adequate. Indeed, the fact that the Railroad was denied the injunction is inescapably a determination that the statute is constitutionally valid, and this was done by a single, not a 3-Judge Court. Unless the attack is so insubstantial to present no real question, the procedure commits this to a 3-Judge Court, not a single Judge.

There is no reason why the question of a 3-Judge Court should be left in this unsatisfactory position in which either an appeal to the Fifth Circuit, if successful, would merely return it months later for a 3-judge determination, or a present effort to obtain mandamus in the Supreme Court against the District Judge or me to convene a 3-Judge Court. It is better administration for me to constitute a 3-Judge Court under the special order which commits the determination initially to the 3-Judge Court. Especially is that so where the 3-Judge Court can utilize the present record with little or no further physical convening, and the decision can then be a consolidated one of separate judgments by (a) the 3 Judges, (b) the single Judge with (c) each expressly joining in the other. This is the procedure outlined in Jackson v. Choate, 5 Cir., 1968, 404 F.2d 910; Jackson v. Department of Public Welfare, State of Florida, S.D.Fla., 1968, 296 F.Supp. 1341.

A 3-Judge Court is therefore being constituted.[6]

---

3. 1967 Georgia Laws, Georgia Code § 95–1907.1.

4. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794.

5. With that commendable exercise of judicial inventiveness, the District Judge worked out with counsel a system by which the 3-judge question would be postponed until all evidence had been received and if the Judge concluded a 3-Judge Court was required, the transcript of the evidence would be submitted to the 3-Judge Court as the record (to be supplemented if desired).

6. Obviously the appeal in No. 27335 should be stayed until the 3-Judge Court has rendered its decision. The 3-Judge Court has plenary power to vacate, suspend or stay any orders of the District Court. If it concludes that this is a proper case for a 3-Judge Court, the appeal will be direct to the Supreme Court. If it concludes a 3-Judge Court is not required, the appeal will be to the Fifth Circuit.