**Fernando RODRIGUEZ, Jr., et al.**

**v.**

**The Honorable Archie S. BROWN et al.**

**Civ. A. No. 68–206–SA.**

United States District Court
W. D. Texas,
San Antonio Division.

May 12, 1969.

Pete Tijerina, Mario Obledo, San Antonio, Tex., Jack Greenberg, New York City, for plaintiffs.

James E. Barlow, San Antonio, Tex., Lonny F. Zwiener, Austin, Tex., for defendants.

Before GOLDBERG, Circuit Judge, SPEARS, Chief Judge, and ROBERTS, District Judge.

SPEARS, Chief Judge:

The threshold question is whether or not this is a case which should be heard on its merits by a three-judge court. We hold that it is not.

This suit was brought by plaintiffs in the form of a class action attacking (a) the constitutionality of the Texas statutes which set up the state procedural system for the selection of grand jury commissioners and the grand jury, and (b) the manner in which said statutes are applied with respect to the classes plaintiffs seek to represent.

On October 14, 1968, the writer of this opinion, as the presiding judge before whom the proceedings were pending, followed Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) and Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and

---

declined to request the Chief Judge of the Circuit to convene a three-judge court, in an order reading, in pertinent part, as follows:

"Plaintiffs charge that there has been a systematic, unlawful and unconstitutional exclusion of Mexican-Americans from grand jury commissions and grand juries in Bexar County, and that the inclusion of a 'minimal or token number of Mexican-Americans on the grand jury commissions and grand juries does not prevent the systematic exclusion theory from operating." * * *

"The provisions of the statutes governing the selection of jury commissioners and grand juries in Texas have remained substantially the same for many years. The Texas method of forming grand juries as provided in the statutes has been approved by the Supreme Court of the United States. In Smith v. Texas, 311 U.S. 128 (1940), the Supreme Court held at page 130 of the opinion [61 S.Ct. 164, 85 L.Ed. 84]: '* * * the Texas statutory scheme [for the selection of grand juries] is not of itself unfair * * *.' See also: Akins v. Texas, 325 U.S. 398 [65 S.Ct. 1276, 89 L.Ed. 1692] (1945); Cassell v. Texas, 339 U.S. 282 [70 S.Ct. 629, 94 L.Ed. 839] (1950); and Hernandez v. Texas, 347 U.S. 475 [74 S.Ct. 667, 98 L.Ed. 866] (1954).

"In light of the foregoing decisions with regard to the validity of the Texas system for the selection of jury commissioners and grand juries, this Court is of the opinion that the plaintiffs' claim of unconstitutionality is obviously without merit and insubstantial. For this reason, plaintiffs' request for the convening of a three-judge court is DENIED.

"The constitutionality of the statutes having been dealt with, we are left with the contention that the defendants in this action are administering constitutional statutes in an unconstitutional manner. Assuming that such allegations could be substantiated, this

would not bring the plaintiffs within the ambit of three-judge jurisdiction. 'The statute comes into play only when an injunction is sought "upon the grounds of the unconstitutionality" of a statute.' Bailey v. Patterson, supra. This does not contemplate actions predicated upon claimed unconstitutionality in the result obtained from the use of the statute. The distinction was succinctly stated in Nichols v. McGee, 169 F.Supp. 721, 724 (N.D.Cal.1959), appeal dismissed 361 U.S. 6 [80 S.Ct. 90, 4 L.Ed.2d 52]: 'Where the issue is one of actual discrimination, rather than the constitutionality of a state law, the issue is factual and may not properly be addressed to a three-judge court * * * for the explicit language of Section 2281 of Title 28 U.S.C.A., limits the jurisdiction of a three-judge court to consideration of statutes * * *.' This further reinforces this Court's position with regard to its denial of plaintiffs' request for the convening of a three-judge court."

Subsequently, however, on January 10, 1969, in light of Jackson v. Choate, 404 F.2d 910, decided by the Fifth Circuit on November 29, 1968, the designation of the three-judge court was requested, and this panel was so designated on January 16, 1969, in an order by Chief Judge John R. Brown which provided, among other things, that:

"This designation and composition of the 3-Judge Court is not a prejudgment, express or implied, as to whether this is properly a case for a 3-Judge rather than a one-Judge Court. This is a matter best determined by the 3-Judge Court as this enables a simultaneous appeal to the Court of Appeals and to the Supreme Court without the delay, awkwardness, and administrative insufficiency of a proceeding by way of mandamus from either the Court of Appeals, the Supreme Court, or both, directed against the Chief Judge of the Circuit, the presiding District Judge, or both. The parties will be afforded

the opportunity to brief and argue all such questions before the 3-Judge panel either preliminarily or on the trial of the merits, or otherwise, as that Court thinks appropriate."

Comprehensive discovery and pre-trial procedures have been conducted under the supervision of the presiding judge, as a result of which the issues have been clearly defined, all discovery has been completed, stipulations have been entered into with respect to many of the material facts, and the parties have agreed that the case may be submitted on the record already made. Since neither side desires to present further evidence, it is obvious that the credibility of witnesses will not be an issue, so the questions involved "can readily be determined on briefs without the judges physically assembling in one place to convene a court session formally". Jackson v. Choate, supra, 404 F.2d at 913.

All members of this panel agree with the quoted conclusions reached by the presiding judge that this is a one-judge, not a three-judge matter; therefore, this cause is remanded to the presiding judge, who will proceed to initially decide the case on its merits.[1] His judgment thereon will become final upon the joinder, by concurrence or dissent, of the other members of the panel. An appeal thereafter will also bring into review the correctness of our order of remand. But, in any event, no matter which way the appellate review goes, whether to the Circuit Court, or ultimately directly to the Supreme Court,

the entire case will be before the appellate court for decision. Jackson v. Choate, supra, 404 F.2d at 913.

The Clerk of this Court is directed to continue to supply the members of this panel with copies of all papers filed, including pleadings, briefs, transcripts, etc., and the presiding judge will keep the other members fully informed concerning future proceedings as they develop.

It is so ordered.

---

1. In Rodriguez v. San Antonio Independent School District, 299 F.Supp. 476 (W. D.Tex. May 12, 1969), the parties had requested oral argument on pending motions, and it was felt that the credibility of witnesses might very well be an issue at the trial on the merits. Under those circumstances, this same panel concluded that, in order to keep itself fully informed, it would "assemble in one place to convene court formally at such time(s) as shall be necessary to hear all oral arguments to be submitted, and to try (the) case on its merits". Thus, in the event the Court of Appeals should be of the opinion that that case was one proper-

ly for a three-judge court, and that the appeal was, therefore, directly to the Supreme Court, no claim could be made in the Supreme Court that the entire three judge panel did not have the advantage of hearing the oral arguments with respect to the pending motions, and/or that it did not exercise its collective judgment concerning matters presented at the trial on the merits. However, as in this case, the presiding judge was charged with the duty of initially deciding the case, with its judgment to become final upon the joinder of the remaining members of the panel.