STATE OF ALABAMA, MacDonald Gallion as Attorney General, State of Alabama, Plaintiffs,

v.

UNITED STATES of America, Charles S. White-Spunner, as United States District Attorney, Ollie Mae Davis, as Mother and Next Friend of Betty Ann Davis, and James Allen Davis, Jerris Leonard, as Chief of Civil Rights Division, Department of Justice, and Robert H. Finch, as Secretary of Health, Education and Welfare, and Birdie Mae Davis, Defendants.

Civ. A. No. 5935–70–P.

United States District Court, S. D. Alabama, S. D.

June 26, 1970.

**1320**

MacDonald Gallion, Atty. Gen., John G. Bookout, Deputy Atty. Gen., Gordon Madison, Asst. Atty. Gen. of Alabama, Montgomery, Ala., for plaintiffs.

Sara J. Beery, Attorney, Dept. of Justice, Washington, D. C., C. S. White-Spunner, Jr., U. S. Atty., Southern District of Alabama, Mobile, Ala., Vernon Z. Crawford, and A. J. Cooper, Jr., Mobile, Ala., Lowell Johnston, Jack Greenberg, and Michael Davidson, New York City, for defendants.

Before GEWIN, Circuit Judge, and THOMAS and PITTMAN, District Judges.

PER CURIAM:

A 1970 Special Session of the Alabama Legislature enacted a statute entitled, "An Act, To Prevent Discrimination on Account of Race, Creed or National Origin in Connection with the Education of the Children of the State of Alabama." Laws Sp.Sess.1970, p. 2601.[1] This Act was approved by the Governor of Alabama on March 4, 1970. In the present action the State of Alabama seeks a declaration that this enactment is constitutional. It also seeks to have this court modify prior judgments to conform to the strictures of this legislation, and to enjoin certain federal officers to conform their actions to its provisions.

The defendants in the present action are the parties plaintiff in Davis v. Board of School Commissioners of Mobile County, Alabama, S.D.Ala., Civil No. 3003–63, and certain officers of the United States. On 31 January 1970, this court entered an order in the Davis case requiring forthwith implementation of a desegregation plan for the Mobile schools. Following the adoption of the Act in question, the Board of School Commissioners by resolution instructed the school superintendent and staff to abide by the Act and to take no further steps in implementing the court-approved plan. The plaintiffs in the Davis case then sought leave to add the Governor and Attorney General of Alabama as parties defendant and to amend their complaint to seek a declaration that the subject Act is unconstitutional and an injunction against compliance with it.

Following a hearing, this court denied the plaintiff's motion. In his order Judge Thomas, discussing the subject Act, stated:

In 1809, Chief Justice Marshall said: "If the legislators of the several states may, at will, annul the judgments of the Courts of the United States, and destroy the rights acquired under those judgments, the Constitution itself becomes a solemn mockery; and the nation is deprived of the means of enforcing its laws by the instrumentality of its own tribunals."

The School Board is required to follow the order of this Court of January 31, 1970, as amended, and if the same is not followed within three days from this date, a fine of $1,000 per day is hereby assessed for each such day,

---

1. The text of the statute is quoted *infra*.

against each member of the Board of School Commissioners.

The plaintiffs in this case, on the 10th day of May 1970, filed a petition requesting this Court to declare the Freedom of Choice Act of the Legislature of the State of Alabama unconstitutional. This case is not the proper vehicle in which to test the constitutionality of said Act. The said petition is therefore dismissed.

The State of Alabama through its Attorney General then instituted the present action joining as defendants the plaintiffs in the *Davis* case, the Chief of the Civil Rights Division of the Justice Department, Charles S. White-Spunner, as United States District Attorney, and the Secretary of Health, Education and Welfare. The present three-judge court was constituted by the Chief Judge of this circuit pursuant to the request of Judge Pittman, before whom this action was originally filed. In his order designating the panel, the Chief Judge states:

> This designation and composition of the three-Judge court is not a prejudgment, express or implied, as to whether this is properly a case for a three-Judge rather than a one-Judge court. This is a matter best determined by the Three-Judge Court as this enables a simultaneous appeal to the Court of Appeals and to the Supreme Court without delay, awkwardness, and administrative insufficiency of a proceeding by way of mandamus from either the Court of Appeals, the Supreme Court, or both, directed against the Chief Judge of the Circuit, the presiding District Judge, or both.

In California Water Service Co. v. Redding,[2] the Supreme Court observed that the statutory requirement of a three-judge court is not applicable unless the constitutional claim regarding a state statute or administrative order is substantial. The Court then stated: "It is therefore the duty of a district judge, to whom an application is made for an injunction restraining the enforcement of a state statute or order is made, to scrutinize the bill of complaint to ascertain whether a substantial federal question is presented. * * *"[3] While "[t]heoretically, this solo travail should be the indispensable first step,"[4] such a procedure has often led to the impenetrable judicial snarl described in Jackson v. Choate.[5] Accordingly, it is now the preferred practice in the Fifth Circuit in all but exceptional cases, to initially constitute the three-judge court and allow it to determine the issue of substantiality and the other issues in the case.[6] The procedure, envisioned in *Jackson*, tends to assure that the decision by the district court will be the final trial court action in the case. Regardless of the proper appellate course, the Court of Appeals or the Supreme Court will have the entire case for determination.[7]

In light of this procedure, the duty, described in *Redding*, to determine the substantiality of the federal question devolves upon the present panel. It is an elementary principle of law that a federal court has jurisdiction of a case, initially, to determine whether it has jurisdiction to ultimately decide the merits of the case.[8] As Chief Judge Brown observed in *Jackson*, "Frequently in resolving the threshold issue of substantiality—i. e., the need for a 3-Judge Court—the Court has to go to the very

2. 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). *See* Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

3. 304 U.S. at 254, 58 S.Ct. at 866.

4. Jackson v. Choate, 404 F.2d 910, 912 (5th Cir. 1968).

5. 404 F.2d 910 (5th Cir. 1968).

6. *Id.*

7. *See* Hargrave v. McKinney, 302 F.Supp. 1381 (M.D.Fla.1969); Rodriguez v. Brown, 299 F.Supp. 479 (W.D.Tex. 1969).

8. C. Wright, Federal Courts § 16 at 50–53 (2d ed. 1970).

merits of the case." [9] Such is the case here. After a careful study of the complaint and following a hearing on the question, we are of the unanimous opinion that the State of Alabama's claim does not present a substantial federal question inasmuch as it is foreclosed by prior decisions of the United States Supreme Court.[10]

The Act in question provides:

*Enrolled,* An Act, TO PREVENT DISCRIMINATION ON ACCOUNT OF RACE, COLOR, CREED OR NATIONAL ORIGIN IN CONNECTION WITH THE EDUCATION OF THE CHILDREN OF THE STATE OF ALABAMA. BE IT ENACTED BY THE LEGISLATURE OF ALABAMA: *Section 1.* No person shall be refused admission into or be excluded from any public school in the State of Alabama on account of race, creed, color or national origin. *Section 2.* No student shall be assigned or compelled to attend any school on account of race, creed, color or national origin, or for the purpose of achieving equality in attendance or increased attendance or reduced attendance, at any school, of persons of one or more particular races, creeds, colors or national origins; and no school district, school zone or attendance unit, by whatever name known, shall be established, re-organized or maintained for any such purpose, provided that nothing contained in this section shall prevent the assignment of a pupil in the manner requested or authorized by his parents or guardian, and further provided that nothing in this section shall be deemed to affect, in any way, the right of a religious or denominational educational institution to select its pupils exclusively or primarily from members of such religion or denomination or from giving preference to such selection to such members or to make such selection to its pupils as is calculated to promote the religious principle for which it is established. *Section 3.* The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains. *Section 4.* All laws and parts of laws in conflict herewith are hereby repealed. *Section 5.* This Act shall become effective upon its passage and approval by the Governor, or upon its otherwise becoming a law.

The constitutional question involves only Section 2 of the Act. This section purports to make school administrators neutral on the question of desegregation and limits their tools for the accomplishment of this constitutional obligation to "freedom-of-choice" plans. It is clear, indeed, it is insisted by the State of Alabama, that such a limitation is in direct conflict with numerous desegregation plans approved and ordered by federal courts throughout Alabama.[11]

9.  404 F.2d at 913.

10. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Potts v. Flax, 313 F.2d 284 (5th Cir. 1963).

11. Paragraph VI of the complaint provides:
   It is further alleged by plaintiffs that the said Act if constitutional is required to be followed and applied by all courts, state and federal; that where conflict exists between prior orders of any court and the Act the orders should be amended or modified to conform to the provisions of the state law.
The prayer for relief contains the following:

2. By way of supplemental relief, if the said Act is decreed to be constitutional, that this court modify or amend every prior order relating to the public schools issued by it so as to make the orders conform to and not conflict with the provisions of Act No. 1.
5. That defendants Jerris Leonard, as Chief of the Civil Rights Division, be ordered by this court to follow the provisions of said Act No. 1 in all future cases involving the desegregation of the public schools in Alabama and to apply to all courts in Alabama in which he has appeared for modification of prior decrees which now conflict with the provisions of Act No. 1.

An unwaivering line of Supreme Court decisions make it clear that more than administrative neutrality is constitutionally required. "Under explicit holdings of this Court the obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary schools. Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 234, 84 S.Ct. 1226, 12 L.Ed.2d 256, 267 (1964); Green v. County School Board of Kent County, 391 U.S. 430, 438–439, 442, 88 S.Ct. 1689, 20 L.Ed.2d 716, 723, 724, 726 (1968)."[12] Neither are "freedom-of-choice" plans the optimum tool for the accomplishment of this obligation. In Green v. County School Bd.[13] the Court held such a plan insufficient, stating, "if there are reasonably available other ways, such for illustration as zoning,[14] promising speedier and more effective conversion to a unitary, non-racial school system, 'freedom-of-choice' must be held unacceptable."[15]

The settled state of the law convinces us that there is no substantial federal question presented in this case. Where Section 2 of the subject Act conflicts with an order of a federal court drawing its authority from the Fourteenth amendment, the Act is unconstitutional and must fail. The supremacy clause of our compact of government will admit to no other result. Indeed this has already been the result in cases where this and similar legislation has been asserted as a bar to constitutional obligations.[16]

We are also of the unanimous opinion that a three-judge court is not required for the present action under 28 U.S.C. § 2281.[17] However, we are mindful that the question presented is important throughout the State of Alabama. Moreover, the ultimate disposition of this case

12. Alexander v. Holmes Co. Bd. of Ed., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969). *See* United States v. Jefferson County Board of Education, 372 F.2d 836, 845–846 (5th Cir. 1966), aff'd reh. en banc, 380 F.2d 385, cert. denied, Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967).

13. 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. 2d 716 (1968).

14. The subject Act expressly prohibits zoning.

15. *Id.* at 441, 88 S.Ct. at 1696.

16. A Three-Judge Court in the Middle District of Alabama in Lee, et al. v. Macon Co. Bd. of Ed., Civ.No.604–E, on three occasions following passage of the Act, refused to modify prior orders to allow the school boards involved to continue to operate under Freedom of Choice: Tuscumbia City Board, order dated March 12, 1970; Colbert County System, order dated March 16, 1970; Monroe County System, order dated March 23, 1970.

In Swann v. Charlotte-Mecklenburg Bd. of Ed., et al., 311 F.Supp. 265 (W.D. N.C., April 29, 1970), a three-judge court held provisions of an analogous North Carolina law unconstitutional insofar as it interfered with the school board's duty to establish a unitary school system.

In Bivins v. Bibb Co. Bd. of Ed. (M.D. Ga. No. 1926, May 22, 1970) the district court enjoined an action in state court which sought an injunction requiring the local board to comply with a similar Georgia statute.

17. 28 U.S.C. § 2281, provides for a three-judge court where the plaintiff seeks, "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute * * * upon the ground of the unconstitutionality of such statute. * * *" It is a technical statute to be strictly construed. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1948); C. Wright, Federal Courts § 50 at 189 (2d ed. 1970). For 2281 to apply a state statute must be *challenged* on constitutional grounds in an action in which *injunctive relief* is sought against a state officer who is a party *defendant*. C. Wright, *supra*. The only state officer involved in the instant case is a party plaintiff seeking to uphold the constitutionality of the state statute involved. The injunctive relief requested would operate against officers of the federal government. Inasmuch as the injunctive relief requested against the federal officers is not related to a constitutional attack on any federal statute, a three-judge court is not required by 28 U.S.C. § 2282.

on appeal should be free from unnecessary delay in order to minimize any disruptive effect on the upcoming school year.

Out of an abundance of caution, against the possibility that this case might fall upon the snares described in Jackson v. Choate, we remand the case for action by a single district judge. The judgment of the district court will become final when joined, through concurrence or dissent, by the other members of the present panel. This assures that, in the event of an appeal, the appropriate appellate court, whether the Court of Appeals or the Supreme Court, will have the entire case for decision.[18]

## ORDER OF DISMISSAL

PITTMAN, District Judge.

For the reasons stated in the opinion of the three-judge panel remanding the present case to a single judge,[1] the same is hereby dismissed.

GEWIN, Circuit Judge, and THOMAS, District Judge, concur in this order.[2]

---

18. Rodriguez v. Brown, 299 F.Supp. 479 (W.D.Tex.1969). *See* Hargrave v. McKinney, 302 F.Supp. 1381 (M.D.Fla. 1969); Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968).

1. Opinion of Judges Gewin, Thomas, and Pittman, dated June 26th, 1970.

