**Roy N. GRUENBURG, Plaintiff,**

v.

**Thomas G. KAVANAGH et al.,
Defendants.**

**Civ. No. 6–70509.**

United States District Court,
E. D. Michigan, S. D.

April 16, 1976.

---

Joseph L. Sulek, Swick & Sulek, St. Clair Shores, Mich., for plaintiff.

J. Ronald Kaplansky, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

Plaintiff, a duly elected Judge for Michigan's 37th Judicial District, filed this action pursuant to 42 U.S.C. § 1983, alleging that proceedings initiated by the Judicial Tenure Commission (JTC) deprived him of rights secured by the due process clause of the fourteenth amendment. The JTC was created by Article VI, § 30 of the Michigan Constitution, which in part provides that:

" . . . the supreme court may censure, suspend with or without salary, retire or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. The supreme court shall make rules implementing this section . . . ."

Pursuant to this mandate, the Michigan Supreme Court promulgated Mich.Gen.Ct. Rule 932. This Rule provides, *inter alia,* that:

"Upon notice to respondent, the [Judicial Tenure] commission may petition to the Supreme Court for an order suspending a judge from acting as a judge pending final adjudication of a pending complaint." Mich.Gen.Ct. Rule 932.20.

On December 11, 1975, the JTC filed a complaint against plaintiff, together with a petition asking for plaintiff's interim suspension.[1] The Petition for Interim Suspension was served upon the plaintiff, as was a notice for a December 23, 1975 hearing.[2] Plaintiff filed a response to the Petition for Interim Suspension with the Michigan Supreme Court on or about December 22, 1975. On January 29, 1976, the Michigan Supreme Court, in response to the Petition for Interim Suspension filed by the JTC, ordered plaintiff to refrain from acting as a judge pending final adjudication of the complaint filed against him.

Plaintiff now alleges that the order of interim suspension, issued without a hearing and prior to final adjudication of the charges filed against him by the JTC, deprived him of "liberty" and "property" without due process of law; that the interim suspension was issued in violation of Mich.Gen.Ct. Rule 932.20, which contemplates suspension only after a hearing before a master; that the suspension irreparably damaged his good name, reputation and opportunity to be re-elected to judicial office; that the Executive Director of the JTC violated the "confidentiality and privilege" provisions of Mich.Gen.Ct. Rule 932.-22; and that the JTC complaint failed to apprise him of sufficient factual allegations to permit the preparation of a proper defense. Although plaintiff's complaint prayed for a temporary restraining order (to enjoin defendants from enforcing the suspension), he did not, as our practice requires, move separately for the restraining order at that time; rather, he made such a motion only after the JTC began its hearing on the charges made against plaintiff. Moreover, plaintiff did not request or file an application for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284.

Defendants have moved to dismiss, contending that the court lacks jurisdiction because the complaint falls within the purview of 28 U.S.C. § 2281; that plaintiff has not raised a substantial federal question or demonstrated a likelihood that his ultimate claim of unconstitutionality will prevail; and that considerations of comity dictate that, under the circumstances presented

---

1. The complaint was subsequently amended on January 13, 1976.

2. Plaintiff alleges he was not afforded the scheduled hearing and defendants' pleadings do not dispute this allegation.

here, a federal court should withhold injunctive relief.

█ Defendants impliedly acknowledge that state governmental action, which tends to deprive an individual of "liberty" or "property" interests protected by the due process clause of the fourteenth amendment, is restricted by procedural due process safeguards. Nevertheless, they argue that comity considerations dictate that we refrain from exercising our jurisdiction in this matter. The defendants' view of comity is misconceived. Where it is clear that governmental action is depriving a citizen of protected rights, comity is no justification for federal courts to withhold relief. On the other hand, where the violations are not flagrant or do not exist, considerations of comity would compel us not to exercise our jurisdiction.

█ The defendants assert that plaintiff's complaint and prayer for relief trigger the application of 28 U.S.C. § 2281, which requires a three-judge court. That Section provides:

> "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges . . . ."

Plaintiff's complaint and motion for a temporary restraining order fulfill all the prerequisites of § 2281. Plaintiff is challenging a state statute, state officers are made parties defendant, injunctive relief is sought and constitutional violations are alleged.[3] See Wright, *Law of Federal Courts,* § 50 (2d Ed.1970); *Sullivan v. Meade County Independent School District,* 387 F.Supp. 1237 (D.S.D.1975). Thus, a district court sitting alone cannot grant the relief plaintiff seeks.

█ An application for a three-judge court would still be timely in the instant case. Were such an application made, however, it could not be granted. Upon review of the complaint, motions, briefs and argument of counsel, we have concluded that plaintiff has not asserted a substantial constitutional claim, whether plaintiff's allegations are considered attacks upon the constitutionality of the Michigan constitutional provisions or as assertions that these provisions are unconstitutionally applied as to him. *Swift & Company v. Wickham,* 382 U.S. 111, 114–115, 86 S.Ct. 258, 260–261, 15 L.Ed.2d 194, 197–198 (1965); *Idlewild Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796 (1962); *Phillips v. United States,* 312 U.S. 246, 251–253, 61 S.Ct. 480, 483–484, 85 L.Ed. 800, 805–806 (1941); *Ex parte Poresky,* 290 U.S. 30, 31–32, 54 S.Ct. 3, 4, 78 L.Ed. 152, 153 (1933); *Johns v. Redeker,* 406 F.2d 878, 880 (8th Cir. 1969); *Ex parte Bransford,* 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249, 1253 (1940).

█ Plaintiff's right to hold judicial office derives from state constitutional and statutory provisions, not the federal constitution or laws. Nothing in the federal constitution mandates that a state must permit a judge to hold judicial office unhampered by standards of conduct. A state that creates a public office can set standards of conduct for the state officer. The United States Constitution does not guarantee plaintiff a right or privilege to run for or retain state elective judicial office. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944);[4] *Peterson v. Knutson,* 367

---

**3.** The language "any State statute" includes state constitutional provisions and court rules having state-wide application. *See Keppel v. Donovan,* 326 F.Supp. 15 (D.Minn.1970), *aff'd without opinion,* 405 U.S. 1034, 92 S.Ct. 1304, 31 L.Ed.2d 576 (1972); *Trombetta v. Florida,* 339 F.Supp. 1359 (M.D.Fla.1972). Moreover, state court judges are "state officers" within

the meaning of § 2281. *Gatling v. Butler,* 52 F.R.D. 389 (D.Conn.1971).

**4.** The *Snowden* court indicated, 321 U.S. at 7, 64 S.Ct. at 400, 88 L.Ed. at 502, that it was merely reaffirming *Taylor & Marshall v. Beckham* (No. 1), 178 U.S. 548, 20 S.Ct. 890, 44

F.Supp. 515, 517 (D.Minn.1973); *Napolitano v. Ward,* 317 F.Supp. 83 (N.D.Ill.1970), *aff'd,* 457 F.2d 279 (7th Cir.), *cert. denied,* 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486 (1972), *reh. denied,* 410 U.S. 947, 93 S.Ct. 1351, 35 L.Ed.2d 616 (1973).

■ Nor can we agree with plaintiff that the JTC proceedings, as applied to him, deprive him of "liberty" or "property" contrary to due process guarantees or that defendants have neglected to make adequate provision to assure due process of law to persons holding judicial office. The Supreme Court has stated that " 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed.·817, 849 (1951), and that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). *See Mathews v. Eldridge,* 424 U.S. 319, 329, 96 S.Ct. 893, 900, 47 L.Ed.2d 18, 30, 44 U.S.L.W. 4224, 4228 (1976). Here, the order of interim suspension was not issued until after the plaintiff had notice and a reasonable opportunity to respond, not only to the complaint, but also to the Petition for Interim Suspension. That response may well have indicated that oral arguments would not have assisted the court. An oral appearance in these circumstances is not an essential ingredient of due process. This is especially true here, as Mich.Gen.Ct. Rule 932 provides for an elaborate and constitutionally adequate procedure for adjudicating allegations of judicial impropriety. Plaintiff is afforded the opportunity to be represented by counsel, to examine and cross-examine witnesses, to present evidence, to submit briefs and is allowed to orally argue his case before a judicial officer appointed as a master (who is required to file findings of fact and conclusions of law). Mich.Gen.Ct. Rule 932.20 merely allows a judge to be suspended from acting as a judge. The interim suspension from his duties does not divest plaintiff of his employment. Plaintiff continues to draw his salary during his suspension. His permanent removal will not occur, if it occurs at all, until after he has been afforded a full and complete hearing. Since plaintiff does not have a constitutional right to hold public office in the first instance, relieving him temporarily from his duties and subsequently affording him a full opportunity to be heard does not offend the due process clause of the fourteenth amendment. *Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15, 35 (1974).

■ Plaintiff also contends that the interim suspension without a hearing irreparably damaged his good name, reputation and opportunity to be re-elected. One's good name and reputation alone, apart from some more tangible interest such as employment, however, do not implicate any "liberty" or "property" interests "sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* —— U.S. ——, ——, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405, 414, 44 U.S.L.W. 4337, 4340 (1976).[5] Although plaintiff's employment is arguably involved here, he will not be di-

---

L.Ed. 1187 (1900), and *Cave v. Newell,* 246 U.S. 650, 38 S.Ct. 334, 62 L.Ed. 921 (1918).

5. Plaintiff relies upon *Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884, 886–887 (1954), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), to support his claim that the interim suspension without a hearing irreparably harmed his reputation and opportunity to be re-elected. Both of these cases, however, involve rights much more fundamental than plaintiff's claimed rights which do not rise to the stature of the right to child custody involved in *Stanley* or the constitutional right to an equal education involved in *Bolling.* Similarly, plaintiff's reliance upon *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), is misplaced. The dicta in *Roth* concerning a person's reputation being at stake must be read in light of the facts presented in that case. Although *Roth* stated that notice and opportunity to be heard are essential when a person's name or reputation is at stake, this dicta treated a hypothetical situation wherein a teacher was discharged without a hearing. Here, plaintiff has not been discharged and is, at this very moment, being afforded a full hearing.

vested of that employment, if at all, until there has been a full hearing. Similarly, plaintiff's contention that his opportunity to be re-elected has been irreparably damaged is much too intangible an interest to invoke the protection of due process. Plaintiff may well be vindicated and re-elected upon completion of the hearings now under way. In any event, Mich.Gen.Ct. Rule 932.-20 was enacted before plaintiff was first elected and he holds office subject to the rule. *Sarisohn v. Appellate Div., Second Dep't, Supreme Court of New York,* 265 F.Supp. 455, 459 (E.D.N.Y.1967).

Plaintiff's remaining contentions that his interim suspension violated Mich.Gen.Ct. Rule 932.20, that the Executive Director of the JTC violated the "confidentiality and privilege" provisions of Mich. Gen.Ct. Rule 932.22, and that the complaint failed to advise him of sufficient facts to defend, involve state rights and privileges. What we have said concerning comity would require us to refer these contentions to state courts for resolution. Comity would, no doubt, be equally applicable even if it is assumed that plaintiff's assertion that the complaint did not apprise him of sufficient facts to defend includes the argument that the complaint should include a prayer to indicate whether the JTC will seek censure, suspension, reprimand or still another remedy. It may be true that fairness would entitle plaintiff to such a prayer in the complaint. The inclusion of such a prayer would permit this plaintiff, as all defendants required to respond to a civil complaint, to evaluate his defenses and the options available to him. All civil complaints include a prayer for the relief being sought. Michigan Gen.Ct. Rule 932.8(b) provides that "a complaint shall be in the form similar to a complaint filed in a civil action in the circuit court." However, we are persuaded that whether such a prayer is or is not included does not involve a constitutional deprivation.

Accordingly, IT IS ORDERED that plaintiff's motion for a temporary restraining order or for a preliminary injunction be and the same hereby is denied;

IT IS FURTHER ORDERED that the complaint, which seeks only injunctive relief and fails to state a claim upon which such relief can be granted, be and the same hereby is dismissed.